ALBERT KEITH BROWN, et al., Plaintiffs-Appellants, Cross-Appellees, *v.* CLARK EQUIPMENT COMPANY, a Delaware Corporation, Defendant-Appellee, Cross-Appellant, and WARD FOODS, INC., a New York Corporation, doing business as G. M. INDUSTRIES, Defendant-Appellee

NO. 6177

SEPTEMBER 30, 1980

RICHARDSON, C.J., OGATA, MENOR, JJ., RETIRED JUSTICE KOBAYASHI, ASSIGNED BY REASON OF VACANCY, AND CIRCUIT JUDGE SHINTAKU, IN PLACE OF KIDWELL, J., DISQUALIFIED

## OPINION OF THE COURT BY KOBAYASHI, J.

This is an appeal from the special verdict of the jury and the judgment of the court below by Albert Keith Brown, et al., plaintiffs-appellants (hereinafter Brown) and Clark Equipment Company, defendant-appellant (hereinafter Clark Equipment or Clark). The litigation below involved an action in tort (sounding in negligence and in strict liability) for the wrongful death of Barbara A. Brown caused by the impact of a heavy vehicle (a front-end rubber-tired shovel loader, weighing 35 plus tons) operated by an employee of Ward Foods, Inc., defendant-appellee. (hereinafter Ward Foods).

Brown specifically appeal from the special jury verdict of no general damages to the Estate of Barbara A. Brown, and from the verdict and judgment absolving Ward Foods of any responsibility for the death of Barbara Brown. Further, Brown appeal from the trial court's denial of Brown's Motion for Judgment Notwithstanding the Verdict of the Jury, to be entered against Ward Foods.

Clark Equipment appeals from the Special Jury Verdict generally and judgment entered accordingly, and from the trial court's denial of its Motion for Judgment Notwithstanding the Verdict or in the Alternative for a New Trial on the issue of liability.

The following special verdict was returned by the jury:

1(a). Was WARD FOODS, INC. or BERTRAM KIMURA negligent with respect to the operation of the Michigan Loader?
ANSWER: no

1(b). If the answer to question 1(a) was "yes", was such negligence a proximate cause of the damages suffered by Plaintiffs?
ANSWER: _____

2(a). Was the Defendant CLARK EQUIPMENT COMPANY negligent?
ANSWER: yes

2(b). If the answer to question 2(a) was "yes", was such negligence a proximate cause of the damages suffered by Plaintiffs?
ANSWER: yes

3(a). Was BARBARA A. BROWN negligent?
ANSWER: no

3(b). If the answer to question 3(a) was "yes", was such negligence a proximate cause of the damages suffered by Plaintiffs?
ANSWER: _____

4. Taking the combined negligence which caused the accident as 100%, what percentage of such negligence is attributable to:

    (a) WARD FOODS, INC. or
       BERTRAM KIMURA ................. 0%
    (b) CLARK EQUIPMENT COMPANY ...... 100%
    (c) BARBARA A. BROWN .............. 0%

       TOTAL ..................... 100%

5. Did the Michigan Loader 275IIIA at the time it was sold contain a defective condition?
ANSWER: yes
If your answer is "no", do not answer the next question. If your answer is "yes", go on to the next question:

6. Was the defective condition a proximate cause of the damages suffered by Plaintiffs?
ANSWER: yes
If your answer is "no", do not answer the next question. If your answer is "yes", go on to the next question:

7. State in a percentage figure the proportionate role which such defective condition played in proximately causing the accident:
ANSWER: 100%

8. What is the amount of damages to the following Plaintiffs:

                                ANSWER
(a) To the Estate of BARBARA A. BROWN:
     General Damages ..............$ —0—
     Special Damages ..............$ 2,541.11

(b) To ALBERT KEITH BROWN:
     General Damages .............$60,000.00
     Special Damages ..............$ 1,700.00

(c) To STEVEN KEITH BROWN .........$40,000.00
(d) To STANLEY KENT BROWN ........$50,000.00

The trial court entered judgment in accordance with the special verdict.
We affirm in part and reverse in part and remand.

I. APPELLANTS BROWN:

A. Brown contend on appeal that the trial court erred in denying their Motion for Judgment Notwithstanding the Verdict of the jury to be entered against Ward Foods. We agree with Brown.

In our opinion the jury's verdict absolving Ward Foods of any responsibility for the death of Barbara A. Brown is unsupported by any substantial, competent evidence. On the other hand, the following substantial, competent evidence clearly show that Ward Foods was negligent and its negligence was one of the proximate causes of the death of Mrs. Brown and of the damages suffered by Brown.

On the date of the accident Bertram Kimura, a mechanic employed by Ward Foods, was repairing the transmission on a Michigan 275 III-A front-end rubber-tired loader (hereinafter the loader) in the rear yard of the Ward Foods shop. In order to add oil to the hydraulic tank, Kimura intended to drive the loader out through the rear gate of Ward Foods, onto Alahao Place, a street near Sand Island Access Road, in the City and County of Honolulu, State of Hawaii, and in through the front gate. He asked Thomas Wolfe, a Ward Foods employee, to obtain the rear gate key and to unlock the rear gate. Wolfe unlocked the gate, and Kimura drove the loader out onto Alahao Place. Kimura had driven the loader eight to ten times previously although he had not read the operator's manual nor had any instruction in driving the loader.

Kimura stopped on Alahao Place for approximately thirty seconds to observe some gauges used to test the transmission before attempting to reverse the loader through the front gate. During this time, Mrs. Brown, driving a 1970 Maverick automobile, drove up from behind and stopped within five feet of the loader.

Kimura's first attempt to reverse was unsuccessful because the loader was in the third range of the reverse gear. Kimura shifted into the first range of reverse and backed the loader onto Mrs. Brown's car, fatally injuring Mrs. Brown.

Kimura testified that on both attempts to reverse, he looked back through the rear window of the cab, at the rear

view mirrors located within the cab, and out from both sides of the cab. He stated that he did not see Mrs. Brown's car behind him. He testified that he was aware of a blind spot to the rear of the loader but didn't know how large the blind spot was or whether it was large enough to hide a Maverick automobile from view.

Kimura testified that there were cars parked on Alahao Place and that it was likely that motor vehicle traffic would be on the street at the time of the accident. The loader weighed over thirty-five tons and was thirty feet long and twelve-and-a-half feet high. It was the largest of its kind in the Hawaiian Islands. Evidence produced by Ward Foods, based on the relative positions of Kimura sitting in the cab of the loader and a Maverick automobile placed to the rear of the loader, established that the blind spot measured 30 feet to the rear of the loader.

Kimura knew that despite his efforts to look to the rear on both sides of the loader, there was still a blind spot restricting his view. Yet, he did not get out to look behind him, nor enlist the aid of Wolfe, a fellow employee of Ward Foods, to spot for him although Wolfe had unlocked the rear gate for Kimura and was readily available as a spotter. (In this connection, Wolfe testified that it was a house rule at Ward Foods for a driver of heavy equipment to use a spotter in congested areas or wherever common sense dictated that a spotter was needed. He further testified that had he known Kimura was going to back into the front gate he would have spotted for him.)

In our opinion, the evidence clearly show that Kimura failed to exercise the ordinary care of a reasonably prudent person to avoid the accident. Due care under the facts of this case required Kimura to take such further steps to make certain that backing the loader would not constitute a hazard.

This court has held that verdicts based on conflicting evidence will not be set aside where there is substantial evidence to support the jury's findings. *Harkins v. Ikeda*, 57 Haw. 378, 557 P.2d 788, 792 n.6 (1976); *Tsugawa v. Reinartz*, 56 Haw. 67, 527 P.2d 1278 (1974); *Petersen v. City and County*, 53 Haw. 440, 441, 496 P.2d 4 (1972). But where there

is no conflict from the evidence and but one inference can be drawn from the facts, it is the duty of the court to pass upon the questions of negligence and proximate cause as questions of law. *Farrior v. Payton*, 57 Haw. 620, 562 P.2d 779 (1977); *Tsugawa v. Reinartz, supra; Struzik v. City and County*, 50 Haw. 241, 437 P.2d 880 (1968). We find that such is the case here.

The jury's finding that the defective condition of the loader, the blind spot, was the sole proximate cause of the death of Mrs. Brown and of the damages suffered by Brown is not supported by any substantial evidence, and the trial court's denial of Brown's motion for Judgment Notwithstanding the Verdict of the jury to be entered against Ward Foods is hereby reversed.

B. Damages:  The jury, in its special verdict, failed to award any general damages to the estate of Barbara Brown. Brown contend that the jury verdict awarding no general damages was erroneous as a matter of law; that the evidence clearly warranted some recovery for loss of future excess earnings and for pain and suffering. We disagree.

The rule regarding appellate review of a jury's award of damages was expressed in *Vasconcellos v. Juarez*, 37 Haw. 364 (1946), wherein this court stated:

> [A] finding of an amount of damages is so much within the exclusive province of the jury that it will not be disturbed on appellate review unless palpably not supported by the evidence, or so excessive and outrageous when considered with the circumstances of the case as to demonstrate that the jury in assessing damages acted against the rules of law or suffered their passions or prejudices to mislead them.

37 Haw. at 366; *Duncan v. Peoria Yellow Checker Cab Corp.*, 45 Ill. App. 3d 653, 4 Ill. Dec. 290, 359 N.E.2d 1242 (1977). The evidence concerning the loss of future excess earnings was conflicting. There was, however, substantial support in the record for the belief that Mrs. Brown, 35 years old at the time of her death, would not have worked at her job as a secretary from the date of the accident until she reached the age of 65 as Brown contended. We cannot say as a matter of

law that recovery for loss of future excess earnings was required.

There was also substantial evidence to support the jury verdict precluding recovery for pain and suffering. *Rohlfing v. Moses Akiona, Ltd.*, 45 Haw. 373, 369 P.2d 96 (1961), established the rule that recovery for pain and suffering depended on the existence of conscious pain and suffering. Although the decedent responded to painful stimuli at the hospital following the accident, she was found unconscious at the scene of the accident and remained so until her death. The jury could have concluded that the decedent's unconsciousness was simultaneous with the impact of the loader, and that, therefore, no award was merited.

## II. APPELLANT CLARK EQUIPMENT:

Clark Equipment, the manufacturer of the loader in question, contends that Brown and Ward Foods failed to establish a prima facie case against Clark under either causes of action: negligence or strict liability in tort.

Under the negligence claim, Clark states that Brown and Ward Foods failed to establish the required standard of care by evidence of the "state of the art" or by expert testimony. Additionally, Clark contends that the above parties failed to introduce competent evidence that any acts or omissions by Clark proximately caused the accident.

We disagree with Clark's contentions.

Although relevant, evidence of industry practices is not necessarily determinative of due care. *Delmarva Power & Light v. Stout*, 380 A.2d 1365 (Del. 1977); *Atchison, Topeka and Santa Fe Railway Co. v. Parr*, 96 Ariz. 13, 391 P.2d 575 (1964), and where the issues are within the common knowledge of the jurors, expert testimony is unnecessary. *Id.* In the present case, substantial evidence showed that there was a large blind spot to the rear of the loader. The question was whether the large blind spot, obscuring the presence of the Maverick car, could have been reduced or be corrected by outboard rear view mirrors. In our opinion the issue was sufficiently within the common understanding of the jurors

and no expert testimony was required. Additionally, Clark Equipment's Product Safety Engineer, Walter Black, testified that at the time the loader was manufactured, a design for such mirrors had been planned by Clark Equipment engineers and mirror kits were available upon the request of purchasers of the loader at a cost of $25. The outboard rear view mirrors, however, were not included in Clark Equipment's parts catalogue, nor were purchasers notified that the kits were available. The record shows that outboard rear view mirrors were clearly within the state of the art at the time the loader was manufactured. In our opinion, under the record herein, the jury could conclude without the benefit of expert testimony that Clark Equipment negligently designed the loader with restricted visibility and was negligent in failing to equip the loader with mirrors correcting the restricted visibility or in failing to notify purchasers of the loader that said mirrors were available. *Pike v. Hough,* 85 Cal. Rptr. 629, 467 P.2d 229 (1970); *Atchison, Topeka and Santa Fe Railway Co. v. Parr, supra.*

In regard to proximate cause, substantial evidence in the record supports the jury's finding that the negligent design of the loader, uncorrected by outboard rear view mirrors, was a proximate cause of Mrs. Brown's death and of the damages suffered by Brown. We so conclude notwithstanding Ward Foods' independent, intervening negligence in the operation of the loader. Ward Foods' negligent operation of the loader, resulting in the death of Mrs. Brown, was reasonably foreseeable. *See Zahora v. Harnichfeger Corp.,* 404 F.2d 172 (7th Cir. 1968).

The court instructed the jury on the issue of Clark Equipment's negligence as follows:

Negligence is the doing of some act which a reasonably prudent person would not do, or the failure to do something which a reasonably prudent person would do, under the circumstances shown by the evidence. It is the failure to use ordinary care.

Ordinary care is that care which persons of ordinary prudence would, under the circumstances shown by the evidence, exercise in the management of their own affairs

in order to avoid injury to themselves or their property, or to the persons or property of others.

The "proximate cause" of an injury is that cause which in direct, unbroken sequence, produces the injury, and without which the injury would not have occurred.

The law does not say that there can be only one proximate cause of an injury, consisting of only one factor or thing, or the conduct of only one person. On the contrary, many factors or things, or the conduct of more than one person, may operate either independently or together to cause injury; and in such a case, each may be a proximate cause of the injury.

However, Clark Equipment cites as error the trial court's refusal to further instruct the jury as follows:

A manufacturer does not guarantee that his product is incapable of doing harm. The law does not require that a manufacturer produce a product which is accident-proof or that he guard against injury to others from a danger which is obvious or which is discoverable by reasonable inspection, or that he supply safety devices to guard against such dangers. All that the law requires is that a manufacturer produce a product that will function properly for the purpose for which it was intended, and that the product be free from hidden defects or concealed dangers.

Clark Equipment contends that failure to so instruct the jury forces upon Clark Equipment an absolute insurer's standard. We disagree.

The obviousness of the danger, unless it justifies the conclusion that the condition is not unreasonably dangerous, has been held not to preclude liability on the part of a manufacturer who negligently designs a machine. The obviousness of peril is relevant to the manufacturer's defenses (*e.g.* contributory negligence), and not to the issue of duty. *Pike v. Hough, supra; see also Brown v. Quick Mix Co., Division of Koehring Co.*, 75 Wash. 2d 833, 454 P.2d 205 (1969). The creation of any unreasonable danger is enough to establish negligence, even though the danger is obvious. *Pike v. Hough, supra.* And it is ordinarily a question for the jury as to

whether or not a failure to install a safety device creates an unreasonable risk. *Id.* As Clark Equipment's requested instruction, taken as a whole, did not correctly state the law the court did not err in refusing to give the instruction.

Clark Equipment offered to modify the said instruction by deleting all but the first and second sentences, or alternatively, by deleting all but the first sentence. However, the court did not err in refusing both modifications. The second sentence which contains the reference to obvious dangers does not correctly state the applicable law. We find that the first sentence, although not otherwise objectionable, was unnecessary as the jury was adequately instructed on the issue of negligence. *Tittle v. Hurlbutt*, 53 Haw: 526, 497 P.2d 1354 (1972).

Additionally, Clark Equipment claims that the court erred in refusing to instruct the jury that there is no duty to anticipate an accident which can result only through the negligence of another.

An act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the negligent or reckless conduct of the other or a third person. Restatement (Second) of the Law of Torts, Section 302A. This court has held that a third party's negligence is not a defense unless such negligence is the sole proximate cause of the plaintiff's injuries. *Radford v. Morris*, 52 Haw. 180, 472 P.2d 500 (1970). The test to determine whether an intervening negligent act is a superseding cause is one of foreseeability of the third person's conduct. *Collins v. Greenstein*, 61 Haw. 26, 595 P.2d 275 (1979). It is evident that Clark Equipment's liability for negligence would only have been superseded if the manner in which Kimura operated the loader was not reasonably foreseeable. The court's instruction was to that effect and since the instruction adequately covered the issue, Clark Equipment's requested instruction need not have been given. *Gibo v. City & County*, 51 Haw. 299, 459 P.2d 198 (1969).

The court instructed the jury on the issue of strict liability in tort as follows:

> In order to establish their claims of strict liability, the

burden is upon the plaintiffs and upon defendant Ward
Foods to prove the following:

1. That the Michigan Loader 275 IIIA contained a
defective condition at the time it was sold;

2. That a product such as the Michigan 275 IIIA
loader is defective if it is dangerous to an extent
beyond that which would be contemplated by an ordi-
nary user using it for its intended use; and

3. That the defective condition was a proximate
cause of Mrs. Brown's death.

Clark Equipment initially argues that the instruction,
which departs from the definition of strict liability in tort
found in the Restatement Second of Torts, Section 402A
(1965),[1] incorrectly states the applicable Hawaii law. Clark
Equipment asserts that the phrase "unreasonably dan-
gerous" in the Restatement definition was endorsed by this
court in *Stewart v. Budget Rent-A-Car Corp.*, 52 Haw. 71, 470
P.2d 240 (1970), making it a requirement for strict liability
that the defective condition render the product unreasonably
dangerous for its intended use.

Clark Equipment errs in its contention. This court did not
adopt the literal definition of strict liability embodied in said
Section 402A. In *Stewart v. Budget Rent-A-Car, supra*, we
said:

[W]e adopt the rule that one who sells or leases a defec-
tive product which is dangerous to the user or consumer
or to his property is subject to liability for physical harm
caused by the defective product to the ultimate user or
consumer, or to his property, if (a) the seller or lessor is
engaged in the business of selling or leasing such product,
and (b) the product is expected to and does reach the user
or consumer without substantial change in its condition

---

[1] Section 402A of the Restatement Second of Torts states:

(1) One who sells any product in a defective condition *unreasonably danger-*
*ous* to the user or consumer or to his property is subject to liability for physical
harm thereby caused to the ultimate user or consumer, or to his property; if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial
change in the condition in which it is sold. (Emphasis added)

after it is sold or leased. This is essentially the rule adopted in the *Second Restatement of Torts*, Section 402A.

The phrase "unreasonably dangerous" was not employed in the formulation of the rule above, and though we stated that we were adopting what was essentially the rule in Section 402A, the precise issue was not then directly before the court.[2]

Comment i of the Restatement Second of Torts, Section 402A, makes it clear that the rule applies only where the defective condition of the product makes it unreasonably dangerous to the user or consumer. However, "unreasonably dangerous" is defined by Comment i as follows:

> The article sold must be dangerous to an extent beyond that *which would be contemplated by the ordinary consumer* who purchases it, with the ordinary knowledge common to the community as to its characteristics. (Emphasis added)

It has been suggested that the "unreasonably dangerous" qualification was added to the Restatement definition to foreclose the possibility that the manufacturer of a product with inherent possibilities for harm would become "automatically responsible for all the harm that such things do in the world." Prosser, *Strict Liability to the Consumer in California*, 18 Hastings L.J. 9, 23 (1966).

However, the "unreasonably dangerous" standard adopted by Section 402A has been criticized as injecting a negligence concept into the theory of strict liability in tort. *Cronin v. J.B.E. Olson Corp.*, 104 Cal. Rptr. 433, 501 P.2d 1153 (1972); *Glass v. Ford Motor Co.*, 123 N.J. Super. 599, 304 A.2d 562 (1973). In *Cronin v. J.B.E. Olson Corp.*, *supra*, the California Supreme Court held that a plaintiff need only prove that a defective condition existed in a product which proximately caused the plaintiff's injury. Stressing that the purpose of strict tort liability "was to relieve the plaintiff from

---

[2] As the plaintiffs point out, the language in *Stewart* may just as well suggest that this court adopted a modified version of Section 402A.

problems of proof inherent in pursuing negligence . . . and warranty . . . remedies, and thereby 'to insure that the costs of injuries are borne by the manufacturers . . . ,' '' 501 P.2d at 1162 (citations omitted), the court held that requiring proof that a defect made the product "unreasonably dangerous" placed a significantly increased burden on the plaintiff. The court thus adopted the rule for strict liability in design cases that a manufacturer is "liable for all injuries proximately caused by any of its products which are adjudged 'defective.' '' *Id.* The court recognized the danger of imposing absolute insurer's liability on manufacturers but held that requiring proof of a defect and proximate cause was sufficient to preclude a manufacturer's liability for all injuries involving the use of its products. *Id.* Several jurisdictions have reached results similar to that in *Cronin. See, e.g., Glass v. Ford Motor Co., supra; Clary v. Fifth Avenue Chrysler Center,* 454 P.2d 244 (Alaska 1969). We see the merit of *Cronin,* however, we believe that it is unnecessary herein to reach the same result.

In accordance with *Stewart v. Budget Rent-A-Car, supra,* the trial court in this case did not employ the words "unreasonably dangerous" in its instruction on strict liability. However, the court defined the meaning of defective condition using the language of 402A, Comment i, which explains the term "unreasonably dangerous." We find that the trial court's instruction is consonant with our holding in *Stewart.*

Clark Equipment's remaining contentions on appeal do not merit any discussion, save and except, Clark's contention that Ward Food's exhibit FF, a National Safety Council pamphlet of safety data (codes or standards) concerning the operation of front-end loaders, was improperly admitted into evidence.

There is a split of authority concerning the admission of safety codes or standards, similar to exhibit FF, promulgated by voluntary industry organizations, such as the National Safety Council. 58 A.L.R. 3d 153 (1974). One view, referred to as the majority view, is that they are inadmissible on the ground that they do not have the force and effect of law and represent merely the opinion of their authors, not delivered under oath and not subject to cross-examination. *Hackley v.*

*Waldorf-Hoerner Paper Products Co.*, 425 P.2d 712 (Mont. 1967); Comment, *Admissibility of Safety Codes, Rules and Standards in Negligence Cases*, 37 Tenn. L. Rev. 581, 582 (1970); 75 A.L.R.2d 778 (1961); *see Swaney v. Peden Steel Co.*, 259 N.C. 531, 131 S.E.2d 61 (1963).

Another view is that such codes are admissible as they are objective standards representing a consensus of opinion carrying the approval of a significant segment of the industry, and that such codes and standards contain the elements of trustworthiness and necessity which justify an exception to the hearsay rule. *Jorgensen v. Horton*, 206 N.W.2d 100 (Iowa 1973); *Lemery v. O'Shea Dennis, Inc.*, 291 A.2d 616 (N.H. 1972); *McComish v. DeSoi*, 42 N.J. 274, 200 A.2d 116 (1964); 58 A.L.R.3d 148 (1974). However, where the safety codes or standards have been held to be admissible as evidence on the issue of negligence, testimony by an expert has been required to establish the proper foundation for admissibility (the codes must be of the type relied on by experts). *See, e.g., Lemery v. O'Shea Dennis, Inc., supra; McComish v. DeSoi, supra.*

However, in *Jorgensen v. Horton, supra,* the Iowa Supreme Court held that the code could be introduced as an alternative to or to buttress expert testimony.

In the instant case the National Safety Council pamphlet was admitted through the cross examination of Mr. Black, Clark Equipment's safety engineer. Although he was not qualified as an expert witness, he was knowledgeable in his field of employment. Mr. Black testified that the National Safety Council was a respected organization; that manufacturers, including Clark Equipment, would acquire from the Council various industrial data pamphlets like exhibit FF; that they were fairly reliable documents and were given weight and consideration by the people in the manufacturing and construction industries.

In our opinion, based on the testimony of Mr. Black a proper foundation was established for the admission into evidence of exhibit FF. We believe that such safety data, codes or standards as exhibit FF promulgated by voluntary industry organizations, such as the National Safety Council, are admissible as evidence on the issue of negligence; that

they are admissible as an exception to the hearsay rule on the basis of trustworthiness and necessity. We further conclude, as held in *Jorgensen v. Horton, supra*, that such safety codes are admissible as an alternative to or utilized to buttress expert testimony. We hold that the trial court did not err herein.

We, therefore, affirm the judgment rendered against Clark Equipment, subject however, to apportionment of liability as stated below. We also affirm the judgment of damages premised on the special jury verdict, save and except, as hereinafter stated. We reverse the judgment absolving Ward Foods of any responsibility for the death of Barbara Brown and enter judgment notwithstanding the verdict of the jury against Ward Foods and remand the case for apportionment of liability as between Ward Foods and Clark Equipment, joint tortfeasors, of the total amount of damages stated in the special verdict of the jury.

*David J. Dezzani (Michael D. Tom* with him on the briefs, *Goodsill Anderson & Quinn* of counsel) for defendant-appellee, cross-appellant, Clark Equipment Company.

*Albert I. Moon, Jr. (Ashford & Wriston* of counsel) for plaintiffs-appellants, cross-appellees.

*Ronald Libkuman (Libkuman, Ventura, Moon & Ayabe* of counsel) for defendant-appellee, Ward Foods, Inc.